SCHOTT, Judge.
This suit was initiated by a member of the New Orleans Police Department to review a ruling of the defendant Board that he was not entitled to disability benefits. He had sustained a severe laceration on his left foot on April 23, 1975, when he went through a plate glass window while on duty. The trial court rendered judgment in favor of plaintiff and against defendant, finding plaintiff disabled and entitled to benefits applied for. From this judgment defendant has appealed.
At the trial, plaintiff produced his own testimony and that of a psychologist, along with the deposition of a physician taken for trial and some medical reports which had been rendered to the Board. Defendant offered the testimony of the secretary of the Board, a police investigator and the operator of a gun shop in Chalmette, Louisiana, together with some documentary evidence. The testimony centered largely around defendant’s offer to plaintiff of a desk job with the Police Department in lieu of the duties he had been performing before the accident which disabled him and around defendant’s allegation that plaintiff at the time of the trial was employed or otherwise engaged in business in connection with the gun shop. There is a paucity of evidence to show what proceedings were conducted before the Board in the first instance and what findings were made by it.
Minutes of a meeting held on January 13 were offered and the official report of the Board’s disposition of plaintiff’s claim on that date is found in the following entry:
“The Disability Pension request for Frank Buras was heard at this meeting, and Frank Buras and his Attorney, Mr. Ronald Welcker appeared before the Board.
“Frank Buras and his attorney made a statement and were asked questions about his disability and the probability of his returning to work and work at a desk job. After a session of questions and answers, the Board asked the attorney and Frank Buras to leave the Conference Room in order that they the Board could discuss his case and further review his medical reports.
“After a lengthy discussion the Board decided to deny the request for disability pension and requested P/O Frank Buras to have his physician re-evaluate his disability and report back to this Board as soon as possible. In the meantime P/0 Frank Buras was asked to return to work at a desk job awaiting the final decision of the Board.”
The medical reports apparently available to the Board at this first meeting were made by Dr. Nick V. Accardo on October 14, 1975, Dr. Stuart I. Phillips on October 23, 1975, and Dr. James L. Nelson on various dates.
Dr. Accardo who saw plaintiff on October 5 stated that his vein, artery, nerve and three tendons had been cut in the accident necessitating emergency treatment at Charity Hospital and transfer to Hotel Dieu where he was treated and operated on by Dr. Nelson. Following hospitalization for eleven days, placement in a cast for five weeks and physical therapy for five or six weeks, his recovery reached a maximum. He was left with a drop foot which caused him to fall and trip on several occasions. Dr. Accardo was of the opinion that further treatment and physical therapy, along with the wearing of a brace, could improve his condition and that a final evaluation of disability should not be made at that time.
Dr. Phillips, who saw plaintiff on October 21, saw the drop foot and recommended surgery as an alternative to plaintiff’s wearing a brace for the rest of his life. He thought there was a 50/50 chance that the surgery would be successful “and if it was he could return to police work.” His report concluded with the following:
“I do not believe it is reasonable to expect him to return to police work with a drop foot brace unless he were in some *574 sort of desk job for the police department. He certainly could not be expected to chase down burglars or perform other functions of the police officer who works a beat, in a drop foot brace.
“I have ordered the brace for the patient and asked him to wear it for a period of two or three weeks. Then he should come back to further discuss the matter. At that time, if he has made up his mind to accept the disability, he can be retired. If he has made up his mind to attempt surgery, I will let you know.”
Whatever reports the Board had from Dr. Nelson on January 13 are not in the record but the Board’s secretary, Lt. Albert W. Raimer, testified that plaintiff was asked to have another medical examination before they would make a final decision. In the meantime plaintiff did not accept the offer of a desk job.
The record contains a report of a medical re-evaluation by Dr. Nelson on January 28, 1976. In it he states that there is no improvement in plaintiff’s disability which consists of a sensory deficit and limitation of motion. Plaintiff’s complaint of numbness and pain on the left ankle and leg “is accentuated when the foot is left in a dependent position, as when sitting, for 2 hours or more.” Dr. Nelson stated specifically that no benefit would flow from additional surgery or physical therapy.
Raimer testified that the minutes of a meeting of the Board held on March 16 show the final disposition of plaintiff’s claim for disability pension. The minutes themselves are not in the record but Raimer said the following action was taken by the Board:
“. . . the disability was denied at that time, with the provisions that he tried to work for one year, and, if in during this one year, if he seen he could not perform the duties that was assigned to him by the Office of the Superintendent, then he could reapply for disability pension.”
The record indicates that the Board had the benefit of a re-evaluation of plaintiff’s condition by Dr. Accardo but this report is not in the record.
In any event, on March 24 plaintiff responded to the Board as follows:
“In reference to our conversation on March 18, 1976 in the pension conference room where the members of the board of the pension system refused my disability pension and instead OFFERED me a desk job for a period of one year, with the option of returning before the board at that time.
“After consulting with my attorney, Mr. Ronald Weilker, I have decided to refuse such a generous offer and take this matter to the Civil District Court for the State of Louisiana. This decision was made on my part because I feel that I am entitled, because of my disability, to this pension. It is also my belief that I am not only entitled to this pension, but that I deserve it, especially after seeing some of the other pensions which were granted by this pension board.”
The trial judge several times during the course of the trial expressed some dissatisfaction with the lack of evidence as to what the Board had done, but nevertheless proceeded with a trial which, under the circumstances, was essentially a trial de novo. While we can understand the trial judge’s action under the circumstances, we do not believe that this procedure was in accord with the law and jurisprudence on the subject.
The procedure governing actions of this type is found in R.S. 33:2284, which provides as follows:
“The Board shall administer, manage, operate, and control the fund; shall make necessary rules and regulations for its operation, distribution, and government; and shall hear and decide all applications for pensions. Its decision on such application shall be final and conclusive. There shall be no appeal from the finding of the Board. . . . ”
As we pointed out in Miller v. Board of Trustees of Police Pension Fund, 286 So.2d 788 (La.App. 4th Cir. 1973), writs refused, 290 So.2d 901, this statute cannot *575 be interpreted to prevent an applicant from seeking judicial review since this would be clearly inconsistent with Art. 1, § 22, of the Constitution of 1974. So, despite the language of the statute an applicant who has been denied a pension by the Board is clearly entitled to bring his case to court. However, we are not concerned here with the question of the availability of judicial review but rather with the scope of that review.
In his original petition, plaintiff invoked the provisions of the Administrative Procedure Act, LSA-R.S. 49:951 et seq., but the trial judge specifically declined during the course of the trial to decide whether or not this act applied to defendant. Similarly, this court, in Miller v. Board of Trustees, supra, in a footnote declined to decide whether the act applied to this defendant. If the act were pertinent a remand to the Board by the district court would clearly have been warranted in view of the lack of a record available for the court to review. See R.S. 49:964. However, whether the act is applicable or not, the intent of the legislature in the formulation of R.S. 33:2284 surely requires that courts give some weight to the findings of the Board as opposed to a trial de novo of the matter.
Confronted with a similar problem in Gertler v. City of New Orleans, 346 So.2d 228 (La.App. 4th Cir. 1977), writs refused, 349 So.2d 885, we held that the Administrative Procedure Act per se did not apply to the Board of Zoning Adjustments of the City of New Orleans, but nonetheless we looked to the act for some direction in deciding the scope of judicial review from a decision of that Board. In that case we held that it was not the function of the court under the zoning law to substitute its own determination for that of the Board absent a finding that the Board’s action was arbitrary and capricious.
One of the purposes of administrative remedies is to enable parties to resolve their disputes in a less cumbersome and less expensive manner than is normally encountered at a trial in court. Administrative proceedings operate to the advantage, not only of the litigants, but also of courts, which are thereby relieved of some matters on their dockets. If an administrative agency makes no record of its proceedings, observes no formalities whatsoever, conducts some of its affairs behind closed doors and provides the parties with no findings whatsoever, the entire purpose of the administrative determination is defeated and the concept of judicial review is frustrated. This is precisely the reason why the Administrative Procedure Act was adopted and why the same sort of procedure should be followed by defendant and other such agencies in order to guarantee justice to applicants as well as the board which, as in this case, might find itself at a disadvantage before a court because of its one loose procedure.
One of the remedies afforded to parties under the Administrative Procedure Act, R.S. 49:964 G., is that the court might remand the case to the agency for further proceedings. Because of the failure of the Board to present to the district court a proper record and findings, we have considered that the appropriate action by the trial court might have been to remand the case to the Board for a full hearing on plaintiff’s application with instructions to make up a complete record and to provide written findings of fact and conclusions for the benefit of a reviewing court.
We have likewise considered reversing the judgment of the trial court and remanding this case to the Board with instructions to conduct proper proceedings in considering plaintiff’s application but have concluded that judicial economy requires us to decide the case with finality on the evidence before us.
At the trial Dr. Nelson’s deposition taken on November 29, 1976, was introduced. He had not seen plaintiff since January and gave the following testimony relative to plaintiff’s condition at that time:
“EXAMINATION BY MR. DOWLING:
Q. You say he can drive?
A. I would think he can drive, yes.
Q. Can he sit down? Could he sit down and work?
*576 A. Yes.
Q. He could hold a job sitting down?
A. Yes.
Q. And like bookkeeping or something of that sort, he could do that, and this injury wouldn’t prevent him from doing that?
A. That is correct.
MR. DOWLING: That is all I have.
EXAMINATION BY MR. WELCKER:
Q. I have a couple of questions that is all I have to ask you, Doctor.
I believe you have given your opinion, Doctor, that you feel that Officer Buras could perform a job sitting down such as a bookkeeper. Would it also be your opinion that he could perform this type of work on a long hour basis, say eight hour a day job at this, in view of his subjective complaints of pain and so forth in his leg?
A. I would not be surprised if he was bothered by pain in that ankle that would occur at the time he was at work.
Q. So, in all likelihood, he would be in pain while he was at work?
MR. DOWLING: No, I think he said he would be surprised if he would not be, he wouldn’t give that as a definite opinion.
THE WITNESS:
Right. I don’t necessarily mean that he would, that he is going to have pain. On the other hand, I would not particularly find it particularly unusual if he did complain of pain.
EXAMINATION BY MR. WELCKER:
Q. That would be consistent with his history and so forth that you are familiar with?
A. Yes.
EXAMINATION BY MR. DOWLING:
Q. But you are not giving that as a positive opinion that he would have pain? You are giving it as an opinion that it might occur and it might not occur?
A. That is correct.”
Thus, Dr. Nelson felt that plaintiff was not disabled from performing the duties of a desk job which the Board offered and he refused. While Dr. Nelson admitted the possibility that plaintiff might feel pain while working he did not consider this possibility in itself to be disabling.
In Miller v. Board of Trustees of Police Pension Fund, supra, we pointed out that the same rules of liberal construction are not available to a claimant for disability benefits under LSA-R.S. 33:2292 as are applicable to a claim under the Workmen’s Compensation Law. Under the statute under consideration, a claimant is entitled to a pension only “if he becomes permanently disabled so as to render his retirement from service necessary.” Where plaintiff was offered a desk job and simply declined it on the possibility that he might feel pain from his injury he cannot be said to be entitled to a pension under the statute.
Finally, we are persuaded by the terms of the Board’s offer.. Plaintiff was given the opportunity to try the desk job for a year with the understanding that he could re-apply if it didn’t work out. This offer seems quite conciliatory especially in contrast to plaintiff’s rather arbitrary refusal to try.
Accordingly, the judgment of the trial court is reversed and set aside and there is judgment in favor of defendant, Board of Trustees of the Police Pension Fund and against plaintiff, Frank Buras, dismissing his suit at his cost.
REVERSED AND RENDERED.